UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELIZABETH FRANCO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 09-10380-WGY |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                                January 26, 2010

I.   **INTRODUCTION**

Elizabeth Franco ("Franco") filed this case against Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of his final decision (the "Final Decision") denying her claim for Social Security Disability Insurance Benefits ("SSDIB").  Appearing pro se, Franco argues that the hearing officer's decision was not supported by substantial evidence, but rather the hearing officer adjudicated the case based on Franco's appearance.  Plaintiff's Brief ("Pl.'s Br.") at 1-2 [Doc. No. 13].  Subsequently, the Commissioner filed a motion to affirm the Final Decision [Doc.

No. 14] and a supporting memorandum ("Def.'s Mem.") [Doc. No. 15].

## II.  Procedural Posture

On February 15, 2007, Franco filed an application for a period of disability and SSDIB, alleging that she was disabled as of July 1, 1991.  Administrative Record ("Adm. R.") at 8, 101, 103.  Her applications were denied and she requested review by the Federal Reviewing Official.  Id. at 66.  The Federal Reviewing Official found that Franco was not disabled and Franco then requested an administrative hearing.  Id. at 73.  Franco appeared and testified at the hearing, which was held in Providence, Rhode Island on October 1, 2008.  Id. at 8.  An independent medical examiner and a vocational expert also testified at the hearing.  Id.  The hearing officer issued her decision on October 14, 2008, denying Franco's application because she found that Franco was not disabled under 20 C.F.R. § 404.1520(f).  Id. at 8-9.  The Decision Review Board selected Franco's case for review and Franco had ten days from the receipt of the hearing officer's decision to submit a written statement for the Decision Review Board's consideration.  Id. at 5.  Franco submitted a written statement which the Decision Review Board considered in conjunction with the record of the case.  Id. at 1. Finding no reason to disturb the hearing officer's decision, the Decision Review Board informed Franco on January 12, 2009, that

the hearing officer's decision had been adopted as the final decision.  Id.  Franco filed this action on March 9, 2009 [Doc. No. 1].

**III. Facts**

Elizabeth Franco was born on June 22, 1960.  Adm. R. at 103.  After graduating from high school, she worked as a home health aid for ten years.  Franco had previously worked as an assistant manager in a clothing store and was working in a bookstore until she was laid off a few weeks prior to the alleged onset date.  Id. at 28, 124, 149.  Her last date of employment was April 16, 1991.  Pl.'s Br. at 1.  In her claim, Franco alleged that she had been disabled since July 1, 1991 due to back pain, asthma, anxiety, and depression.  Adm. R. at 101, 132.  As the last date that Franco met the disability insured status requirements of Title II of the Social Security Act was April 16, 1991 (her last date of employment), her SSDIB coverage expired on December 31, 1996.  Id. at 11, Finding 1; 20 C.F.R. §§ 404.130-33, 404.140.[1]

---

[1] The regulations provide that entitlement to Social Security disability benefits is earned through working at jobs covered by Social Security within a certain time period of becoming disabled.  Specifically, a worker earns a credit for a certain amount of wages earned and can accrue up to four credits a year.  For an individual aged thirty-one or older, that individual must have forty credits, with twenty earned in the ten-year period before the disability.  20 C.F.R. § 404.130.  Franco was thirty-one as of the date of her claimed disability in 1991.  Adm. R. at 103.  She had accrued four credits a year through 1991.  Although Franco claims that she was disabled in 1991, the hearing officer considered whether she demonstrated disability before December 31, 1996, as that was the last date

Thus, Franco had to establish disability on or before that date. Adm. R. at 21.

In the spring of 1991, Franco sought medical treatment for back pain after applying the brake in her car. Id. at 22. X-ray images of her lumbar spine and pelvis taken on April 16, 1991, showed mild scoliosis and first degree spondylolithesis. Id. at 193. When examined by Dr. M. A. Berard on June 12, 1991, the doctor determined that Franco had 4/5 muscle strength in the lower extremities, present deep tendon reflexes, intact sensation, tenderness in the left sacroiliac joints, scoliosis of the thoracic spine, and spasms in the left calf. Id. at 200. For treatment, he prescribed a home exercise program. Id. Shortly thereafter, she began regular treatment with a chiropractor to relieve her back pain. Id. at 203-04. The chiropractor, Dr. Steven W. Fors, found that Franco showed sensory and motor deficits in her left lower extremity with positive nerve root tension signs, joint dysfunction in the pelvis and lower thoracic spine, and tenderness in the lumbar paraspinal muscle. Id. at 203. X-ray images of Franco's lumbar and lumbosacral spine showed spondylolisthesis at level L5 with slight degenerative changes. Id. Dr. Fors diagnosed Franco with sacroiliac and thoracolumbar joint dysfunction secondary to

---

for which she would have earned twenty credits in the ten-year period before disability (four credits a year from 1987 through 1991 plus no credits from 1992 through 1996).

4

scoliosis and spondylolisthesis.  Id.  Based on his diagnosis, Dr. Fors believed that Franco could perform sitting, standing, and walking for no longer than one hour, lifting and carrying no more than ten pounds on a non-repetitive basis, and unlimited traveling, speaking, and handling of objects.  Id. at 203-204. Franco continued treatment with Dr. Fors on a regular and ongoing basis after the initial visit in 1991.  Id. at 217-97.

Through October 14, 1991, Franco reported a steady decrease in back pain as a result of her treatment from Dr. Fors.  Id. at 235.  Despite some complaints of occasional and moderate lumbosacral pain, Dr. Fors continued to note that Franco's case was progressing well through April 8, 1992.  Id. at 239. On May 15, 1992, a Disability Determination Services medical consultant, Dr. Douglass Poirier, reviewed Franco's file and completed a residual functional capacity assessment.  Id. at 205-12.  Dr. Poirier found that Franco frequently could lift ten pounds, occasionally lift twenty pounds, could sit, stand, and walk for approximately six hours in an eight-hour workday, with the option periodically to alternate sitting and standing to relieve pain or discomfort.  Id. at 206.  Another Disability Determination Services medical consultant reviewed Dr. Poirier's file and assessment on July 17, 2002, agreed with his assessment, and diagnosed Franco with scoliosis and obesity.  Id. at 216.

In June 1992, while her other symptoms continued to decrease, Franco complained of acute mid-thoracic pain. Id. at 243. Dr. Fors believed that she had reached a plateau in terms of improvement, and found that she was still very symptomatic and completely disabled. Id. Shortly thereafter, Franco saw another doctor for her back pain. Dr. Albert Franchi examined Franco on July 8, 1992 because of intermittent lower back pain with radiation to her lower leg. Id. at 213-15. Dr. Franchi found that Franco walked with a very mildly guarded gait, did not use a walking aid, and had very mild difficulty getting onto the exam table. Id. at 213. He noted that she stood at five feet, five inches and weighed 250 pounds. Id. Franco told Dr. Franchi that she could drive for a half-hour, walk for one and a half blocks, stand for thirty minutes, sit for one hour, and go up two flights of stairs. Id. Dr. Franchi's final diagnosis was mild scoliosis and spondylolisthesis, but found no evidence of radiculopathy. Id. at 214.

Despite a cut-off date of December 31, 1996, the hearing officer considered evidence regarding Franco's conditions after that date. Franco's treating physician, Dr. John Pedrotty, reported that he had been treating her since January 1997, and since that time she had been receiving treatment for hypothyroidism, hypertension, and chronic neck and lower back pain. Id. at 563. She also received treatment for depression

and anxiety from a local psychiatrist.  Id.  Dr. Pedrotty reported that her medical conditions, depression, and neck pain were all under fairly good control.  Id.  He saw minimal to moderate limitations in lifting, bending, carrying, handling, understanding, remembering, sustaining concentration and persistence, maintaining social interaction, and adapting.  Id.  Nonetheless, Dr. Fors, Franco's chiropractor, filled out a form for Franco's insurance company on February 4, 2008, indicating that she could not perform gainful work due to her chronic pain syndrome.  Id. at 585-86.

   Reviewing her medical record, a Disability Determination Services psychologist concluded that the evidence was insufficient to determine whether Franco suffered any mental impairments prior to December 31, 1996.  Id. at 566.  Similarly, a Disability Determination Services physician reported on May 4, 2007, that there was no medical evidence to substantiate Franco's claim of a disability resulting from back pain and asthma prior to December 31, 1996.  Id. at 582.  During her testimony, Franco acknowledged that she was not diagnosed with diabetes or asthma until after December 31, 1996.  Id. at 34-35.  In addition, she was not diagnosed with anxiety or depression until she began counseling five years prior to her hearing in 2008.  Id. at 30.

Regarding her ability to perform tasks, Franco testified that although she was unable to bathe herself or drive for a short time period after her injury, id. at 27-28, she was able to drive on a limited basis, prepare light meals, sew, crochet, and watch television prior to the expiration of her insured status on December 31, 1996.  Id. at 38.  The independent medical expert who testified during the hearing opined that Franco could perform light work.  Id. at 36.  The vocational expert also testified that Franco could perform light work.  Id. at 45.  The vocational expert classified her work from 1980 to 1990 as a home health aid or homemaker as semiskilled and light as she performed it.  Id. The hearing officer asked the vocational expert to consider a hypothetical of an individual of Franco's age, education, and past relevant work experience who could perform light work of lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds and which involved no more than occasional climbing, crawling, crouching, stooping, kneeling, and balancing.  Id. at 45-46.  Based on this hypothetical, the vocational expert testified that such an individual could perform the work that Franco performed in the past -- home health aid.  Id. at 46-47.  Such a person could also work as an assembler, hand packager, inspector, and general production laborer.  Id.

Based on the medical history and testimony at the hearing, the hearing officer found that Franco's spinal condition and obesity were severe impairments prior to December 31, 1996. Id. at 11, Finding 3. These impairments, however, did not meet or equal the criteria of any impairment listed in Appendix 1, Subpart P, of Regulation No. 404. Id. at 11-13, Findings 3 and 4. The hearing officer held that Franco maintained the residual functional capacity to perform light work that allowed for the "need to change position after sitting for one hour" and no more than occasionally "stooping, crawling, balancing, climbing, kneeling or crouching." Id. at 13, Finding 5. Based on this residual functional capacity, Franco could perform her past relevant work as a homemaker or home health aid, retail sales clerk, and front end supervisor in a book store. Id. at 15, Finding 6. The hearing officer concluded that Franco was not disabled at any time prior to the expiration of her insured status on December 31, 1996. Id. at 16, Finding 7.

## IV. Jurisdiction

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review the final decisions of the Commissioner of Social Security.

## V. DISCUSSION

A.  Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner of Social Security. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner, and "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because under the substantial evidence standard, the court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

As directed by the Social Security Administration under 20 C.F.R. § 404.1520(a), the hearing officer followed a five-step sequential evaluation process in determining whether Franco was disabled.  Adm. R. at 9.  The hearing officer considered, in order, (1) whether Franco was engaged in substantial gainful activity, (2) whether Franco had a medically determinable impairment that was "severe" or a combination of impairments that were "severe," (3) whether Franco's impairment or combination of impairments met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) whether Franco had the residual functional capacity to perform the requirements of her past relevant work, and (5) whether Franco was able to do any other work considering her residual functional capacity, age, education, and work experience.[2]  Id. at 9-10.

B.   Substantial Gainful Activity

The hearing officer found that Franco met the disability insured status requirements of Title II of the Social Security Act through December 31, 1996.  Adm. R. at 11, Finding 1.  Thus, Franco had to establish disability on or before that date.  Id. at 21.  Between the alleged onset date of Franco's disability on

---

[2] This final step was not conducted because the process concluded at the fourth step.  See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001) (noting that "all five steps are not applied to every applicant, as the determination may be concluded at any step along the process").

July 1, 1991, through the last date of her insurance coverage, the hearing officer found that Franco was not gainfully employed. Id. at 11, Finding 2.

    C.   "Severe" Medical Impairments

In her application for a period of disability and SSDIB, Franco sought benefits due to back pain, asthma, anxiety, and depression. Adm. R. at 101, 132. The hearing officer found that while her medical record showed that Franco had a history of diabetes, asthma, hypothyroidism, hypertension, anxiety, and depression, Franco did not submit any medical records to suggest that Franco suffered from or was impaired by any of these conditions from the alleged onset date of July 1, 1991, through the date she was last insured, December 31, 1996. Id. at 12. Franco bore the burden of establishing the existence of these impairments by objective medical evidence. 20 C.F.R. §§ 404.1508, 404.1512. During her testimony, Franco stated that she was not diagnosed with asthma, diabetes, anxiety, or depression until after December 31, 1996. Adm. R. at 30, 34-35. Furthermore, her treating physician testified that as of January 1997, her medical conditions and depression were under fairly good control. Id. at 563. With no evidence of treatment during the relevant time period, the hearing officer reasonably concluded based on substantial evidence that these ailments were not severe impairments.

On the other hand, the hearing officer did conclude that Franco's obesity and spinal condition constituted severe impairments during the relevant time period. Id. at 11, Finding 3. Based on the testimony and reports of medical experts, in conjunction with medical evidence, such as X-rays, the hearing officer concluded that Franco "suffered from congenital scoliosis with the radiographic studies showing mild involvement of the lumbar spine and more marked involvement of the thoracic spine." Id. The hearing officer also found some evidence of spondylolisthesis Lf-S1 or spondylosis at that level. Id. The hearing officer found that there was no evidence of persistent and significant neurological deficits resulting from these conditions. Id.

The finding concerning her obesity was based on the report by Dr. Franchi that she weighed 250 pounds in July 2002. Id. at 12. Based on her height of five feet, five inches, such a weight yields a body mass index of 41.6, which falls in the obese range. Id. at 58.

D.   Meeting or Medically Equaling a Listed Impairment

As required under 20 C.F.R. § 404.1520(d), the hearing officer compared Franco's severe impairments with the listed impairments found in the Social Security regulations. Adm. R. at 13. Under 20 C.F.R. § 404.1520(d), if the claimant's severe impairment meets or medically equals the criteria lists in 20

C.F.R. Part 404, Subpart P, Appendix 1, and the claimant has suffered the severe impairment for the required duration, the claimant is considered disabled regardless of age, education, or work experience, and the analysis need not proceed further. 20 C.F.R. §§ 404.1520(d), 404.1509. In evaluating Franco's severe impairments according to Appendix 1, the hearing officer specifically considered listing 1.04 for disorders of the spine. Id. at 13. To be considered disabling, a disorder of the spine must have:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 104. The hearing officer found no evidence of "disc herniation imposing nerve root compromise, spinal stenosis or arachnoiditis, or findings on physical examinations of persistent and significant neurological deficits." Adm. R. at 13. Franco bore the burden of proving such effects to establish her disability. See Freeman, 274 F.3d

14

at 608 ("The applicant has the burden of production and proof at the first four steps of the process."). Because there was no evidence on the record to suggest that Franco's condition met or medically equaled the listed conditions, the hearing officer's finding was based on substantial evidence.

> E.  Residual Functional Capacity to Perform Past Relevant Work

As Franco's conditions did not meet or exceed the listed conditions, the hearing officer continued to the fourth step to determine whether Franco qualified as disabled. Before considering step four, the hearing officer had to determine Franco's residual functional capacity. 20 C.F.R. § 404.1520(e). To determine Franco's residual function capacity, the hearing officer considered Franco's impairments and whether these impairments could reasonably be expected to produce pain or other symptoms identified by Franco, and whether these symptoms limited Franco's ability to do basic work activities. Adm. R. at 13. The hearing officer determined that Franco's medically determinable impairments could have been reasonably expected to produce her symptoms of "severe back pain and neck discomfort which limited lifting, sitting, standing, walking and postural activities and impaired her concentration." Id. at 14. The hearing officer, however, found Franco's statements regarding the intensity, persistence, and limiting effects of these symptoms not credible to the extent that Franco claimed she could not

15

perform a wide range of light work, limited by the need to change positions after sitting for one hour, and only occasionally stooping, crawling, balancing, climbing, kneeling or crouching. Id. at 13-14.  Instead, the hearing officer credited the reports of the nonexamining state agency physicians on May 15, 1992 and July 17, 1992, finding that Franco could lift and carry up to ten pounds frequently and twenty pounds occasionally, as well as sit, stand, or walk for at least six hours in an eight hour work day as long as she could change positions after sitting for one hour, and only occasionally stooped, crawled, balanced, climbed, kneeled, or crouched.  Id. at 14.  The impartial medical expert who testified at the hearing, Dr. Spindell, concurred with these findings.  Id. at 14, 36.  The only evidence suggesting that Franco's pain was so severe as to prevent her from performing light work appeared in the reports of Franco's chiropractor, Dr. Fors.  Id. at 14-15.  Although Dr. Fors reported on May 13, 1992, that Franco was totally disabled until October 1991, id. at 203, and that she was limited to lifting or carrying ten pounds on a non-repetitive basis and could not sit, stand or walk for longer than one hour, his statements that she was responding well to therapy and that she was reporting only "occasional" and "mild" pain, as well as the other evidence in the record, belie his conclusions.  Id. at 15, 231, 235, 237, 239, 243, 252, 255, 261.  In making her determination, the hearing officer rightly afforded

greater weight to conclusions of the medical doctors, which were supported by the record as a whole, rather than the conclusions of the chiropractor.[3]  Although the First Circuit has not ruled on the weight to be afforded a chiropractor's records in an SSDIB case, other circuits have held that medical sources should be given greater weight.  See Paulson v. Astrue, No. 08-36049, 2009 WL 5184125, at *1 (9th Cir. 2009); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Clinker v. Apfel, 229 F.3d 1151, 1151 (6th Cir. 2000); Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999); O'Connor v. Chater, 164 F.3d 618, 618 (2d Cir. 1998); Walker v. Shalala, 993 F.2d 630, 631-32 n.2 (8th Cir. 1993).  See also Cinq Mars v. Barnhart, No. 05-30137, 2006 WL 961913, at *7 (D. Mass. April 6, 2006) (Neiman, C.M.J.); Reeves v. Barnhart, 263 F. Supp. 2d 154, 162 (D. Mass. 2003) (Neiman, M.J.).

Determining that Franco could perform light work with some limitations, the hearing officer considered whether she could perform her past relevant work.  As her last date of insurance coverage was December 31, 1996, the past relevant work occurred within the fifteen-year period prior to that date.  Adm. R. at 15; 20 C.F.R. § 404.1565 ("We do not usually consider that work

---

[3] Although a chiropractor is not an "acceptable medical source" for diagnosing an impairment, the hearing officer rightly considered Dr. For's records for the issues of severity and functionality.  20 C.F.R. § 416.913(d)(1).

you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies."). During that time period, Franco worked as a home health aid or homemaker, a retail sales clerk and part-time working supervisor at a clothing store, and as a working front-end supervisor at a book store. Adm. R. at 15, 108-109, 124, 132-34, 149-52. Both Franco and the vocational expert described these jobs as of a light exertional level. Id. at 15, 45, 133, 150-52. The hearing officer thus concluded that in light of Franco's residual functional capacity, she could perform her past relevant work from the alleged onset date of July 1, 1991, through her date last insured of December 31, 1996. Id. at 15-16.

Because the hearing officer concluded that Franco could have performed her past relevant work during the relevant time period, she found that Franco was not disabled from her alleged onset date of July 1, 1991, through the last day of her insurance of December 31, 1996 according to 20 C.F.R. § 404.1520(f). Id. at 16.

    F.   Applicant's Appearance

In her brief, Franco argued that the hearing officer made her decision based on Franco's appearance rather than on the medical records. Pl.'s Br. at 1-2. Franco implies that although she does not appear disabled, her medical and mental conditions

are not necessarily manifest to a lay observer.  As described above, the record indicates that the hearing officer made her decision based on the evidence presented to her, including numerous medical reports, Franco's testimony, the testimony of an independent medical examiner, and the testimony of a vocational expert.  The hearing officer's findings were supported by the substantial weight of the evidence, and should not be disturbed.

## VI.  CONCLUSION

Accordingly, the defendant's motion for an order affirming the decision of the Commissioner [Doc. No. 14] is ALLOWED.

SO ORDERED.

 /s/ William G. Young  
WILLIAM G. YOUNG  
DISTRICT JUDGE